UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMY S. NEWCOMB, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16-cv-4019 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Amy S. Newcomb ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief [Dkt. 13] to reverse the Decision of the Commissioner of Social Security, and Defendant responded with a motion for summary judgment [Dkt. 20]. We hereby construe Plaintiff's brief in support of reversing the decision of the Commissioner as a motion. For the following reasons, Plaintiff's motion is granted and the Commissioner's motion is denied. The Administrative Law Judge's ("ALJ") decision is remanded for further proceedings consistent with this opinion.

**I. Background**

    **a. Procedural History and Claimant's Background**

Plaintiff filed an application for disability insurance benefits on August 31, 2010, with an alleged onset date of disability as of September 1, 2008. [Record ("R.") 476, 489.] Her last day of work coincided with her alleged onset date. [R. 215.] Plaintiff was last insured for disability insurance benefits on June 30, 2010. [R. 20.] To obtain benefits, Plaintiff would have to establish

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

disability onset on or before her date last insured, which was June 30, 2010. *See* 42 U.S.C. § 416(i).

During the application process for disability insurance benefits, Plaintiff claimed she stopped working on the alleged onset date due to a combination of physical and mental impairments: fibromyalgia, narcolepsy, depression, and migraine headaches. [R. 215.] Plaintiff's relevant past work consisted of three occupations. From March 2000 through March 2001, she worked as a receptionist at a doctor's office. [R. 216.] From September 2001 through November 2004, she worked as a manager at Jimmy John's sandwich shop. [*Id.*] From September 2007 through September 2008, she worked as a temporary data input clerk for the Will County Assessor's Office. [*Id.*] As a temporary clerk, her primary duties consisted of inputting data; as a dayshift sandwich shop manager, her responsibilities included making schedules, ordering food from vendors, managing staff, and paying bills. [R. 45, 47.]

After her claim was denied at all stages of the administrative process, Plaintiff appealed to this Court. On January 21, 2015, District Court Magistrate Judge Sidney I. Schenkier vacated the Commissioner's decision and remanded Plaintiff's matter to the Commissioner for new proceedings. [R. 609-618.] *See Newcomb v. Colvin,* No. 13 C 7831, 2015 WL 303364 (N.D. Ill. January 21, 2015).

The Social Security Appeals Council remanded the case for further proceedings pursuant to the District Court's Order, after which the ALJ received additional evidence and held a new hearing on December 4, 2015. [R. 496-572, 620-622.] On January 21, 2016, the ALJ issued a new denial of Plaintiff's claim, finding that, although Plaintiff's impairments left her unable to perform her prior work, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, thus making her not disabled within the meaning of the Social Security Act. [R. 473-489.] The Appeals Council then denied Plaintiff's request for

2

review, leaving the ALJ's decision as the final decision of the Commissioner. This second ALJ decision is currently under review by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

    **b.    The ALJ's Decision**

The ALJ issued a written decision on January 21, 2016, following the five-step analytical process required by 20 C.F.R. 404.1520. [R. 473-489.] As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2010. [R. 478.] At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged onset date of September 1, 2008. [*Id.*] At step two, the ALJ concluded that Plaintiff had the severe impairments of narcolepsy, depression, anxiety, and fibromyalgia type syndrome. [*Id.*] Other impairments were determined to be non-severe. [R. 478-481.] At step three, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. [R. 481.] Prior to step four, the ALJ found that through the date of last insured, Plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work, but could not stand or walk more than 30 minutes at a time; could do no more than frequent reaching in all directions with the upper extremities bilaterally; no more than frequent climbing of ramps; no climbing of ladders, ropes, or scaffolds; no more than occasional climbing of stairs, balancing, stooping, kneeling, crouching, or crawling; no more than frequent handling, feeling, fingering, pushing, or pulling with the upper extremities bilaterally; no more than frequent operation of foot controls bilaterally; no more than occasional operation of a motor vehicle; no more than occasional exposure to extreme cold; and no more than frequent exposure to unprotected heights, dangerous moving machinery, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme heat, and vibrations. [R. 482-483.] Furthermore, Plaintiff could tolerate loud noise such as heavy traffic, but due to daytime fatigue, depression,

and anxiety, was limited to understanding and remembering simple instructions to perform simple, routine, and repetitive tasks in a low stress work environment without fast-paced production rates or strict quota requirements, while still being able to meet end-of-day requirements. [*Id.*] At step four, the ALJ concluded Plaintiff was unable to perform her past relevant work as a restaurant manager, medical receptionist, and general office clerk. [R. 488.]

Finally, at step five, the ALJ determined that, upon consideration of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could have performed. [*Id.*] In reaching this conclusion, the ALJ relied on testimony of the vocational expert ("VE"), who was given a hypothetical where a claimant had the same age, education, and work history as Plaintiff, but faced the additional RFC limitations the ALJ determined Plaintiff to have prior to step four. [R. 561-562.] The VE testified an individual with the limitations posed by the ALJ could not perform Plaintiff's past work, but could perform other available work. [R. 562.] First, the VE testified an individual with Plaintiff's RFC restrictions could perform the job of "receptionist, sedentary, unskilled, SVP 2." [2] [*Id.*] The VE testified 149,000 such jobs existed in the national economy, and the job's Dictionary of Occupation Titles ("DOT") code was 237.367-046. [*Id.*] Second, the VE stated the job of "order clerk" could be performed with the provided RFC limitations, and that 8,500 such jobs existed in the national economy. [R. 563.] The VE attested that the job was sedentary, SVP 2, and corresponded to DOT 209.567-014. [*Id.*] Finally, the VE testified, per the ALJ's hypothetical, "there are general office clerks, 66,400 of those in the national economy, sedentary, SVP 2, and the DOT for that job is 209.587-010." [*Id.*]

Next, the ALJ gave the VE a second hypothetical, adding additional restrictions of

---

[2] Specific Vocational Preparation ("SVP") is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."20 C.F.R. § 656.3. Level 2 indicates any time beyond a short demonstration up to and including 1 month; level 3 is over 1 month up to and including 3 months. *Id.*

"occasional, brief, and superficial contact with coworkers, supervisors, and the general public." [*Id.*] With these additional restrictions, the VE eliminated the receptionist and order clerk positions, and reduced the availability of the general office clerk job by two-thirds in the national economy. [R. 563-564.] When questioned by Plaintiff's attorney, the VE noted the reduction in availability of general office clerk jobs was a result of the fact that the job is a "smaller organization type thing where you're doing lots of different things [including] answer[ing] some phones," leading to interaction with the public that exceeds brief and superficial. [R. 565.] The VE responded affirmatively when asked by the ALJ if his testimony was consistent with the DOT and its companion volumes. [R. 564.]

Based on the VE's testimony, the ALJ determined Plaintiff would have been able to perform the requirements of representative occupations such as receptionist, order clerk, and general office clerk. [R. 489.] Accordingly, the ALJ found Plaintiff not disabled as defined by the Social Security Act. [*Id.*]

    **c.**    **Issues Before the Court**

Plaintiff now challenges the ALJ's RFC findings on three grounds. First, Plaintiff contends that the ALJ's RFC findings fail to properly assess Plaintiff's impairments, including her migraine headaches, narcolepsy, and mental health conditions. [Dkt. 13 at 6-12.] Second, Plaintiff argues the ALJ erred in evaluating the credibility of Plaintiff's subjective symptoms. [*Id.* at 12-15.] Third, Plaintiff contends the ALJ's decision failed to address shortcomings in the VE's testimony, namely that it was deficient in the number and types of jobs plaintiff could perform, inconsistent with jobs titles and descriptions provided by the DOT, and did not cite to specific data in support of his findings. [*Id.* at p. 15-19.] Because the Court remands on Plaintiff's third contention, the Court need not reach a conclusion on the ALJ's assessment of Plaintiff's impairments and credibility.

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a standard five-step test inquiry to assess whether a claimant suffers from a disability as defined in the Social Security Act. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the severe impairment meets or equals impairment listed by the Commissioner; (4) whether the claimant is capable of performing past relevant work; and (5) considering the claimant's age, education, and prior work experience, whether they are capable of adjusting to other work in the national economy. 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step, or at steps 3 and 5, a finding of disabled. A negative answer at any point other than step 3 leads to a finding of not disabled. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). The burden of proof rests with the claimant in steps one through four, and shifts to the Commissioner in step five. *Id*.

Section 405(g) of the Compilation of The Social Security Laws states "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining if the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck,* 357 F.3d at 699. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). In reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Even where "reasonable minds could differ" or an alternative position is also supported by substantial

evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699.

Although not required to address every piece of evidence when denying benefits, "the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). The reasoning must "build an accurate and logical bridge from the evidence to his conclusion," sufficient to allow a reviewing court an ability to assess the findings and provide the claimant meaningful judicial review. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); *Clifford*, 227 F.3d at 872. "An ALJ has a duty to fully develop the record before drawing any conclusions…and must adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

**III.  Discussion**

    **a.  The ALJ's Finding Was Based Upon Unreliable VE Testimony that Conflicted with the DOT**

The Commissioner bears the burden of proof at step five of the inquiry into a claimant's disability to provide "evidence that demonstrates that other work exists in significant numbers in the national economy." 20 C.F.R. § 404.1560; *Overman v. Astrue,* 546 F.3d 456, 464 (7th Cir. 2008). ALJs frequently rely on VEs to provide information regarding the kinds of work and the number of jobs a hypothetical person with certain conditions and limitations can perform. *See Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009); *Pagos v. Colvin*, 2015 WL 1502923, at *7 (N.D. Ill. Mar. 27, 2015). In demonstrating the existence of work that a claimant is capable of performing, a VE frequently makes use of the DOT. The DOT – the "bible" of VEs – lists job duties, demands, and accompanying mental and physical requirements and skills. *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010); *Haddock v. Apfel*, 196 F.3d 1084, 1089-90 (10th Cir.

1999). The Social Security Administration relies upon the DOT as an "authoritative" publication and its definitions are accepted as reliable evidence of how jobs are performed in the national economy. *Haddock*, 196 F.3d at 1089-90.

A VE's testimony satisfies the step five burden of proof only if it is reliable. *Overman*, 546 F.3d at 464; *Donahue v. Barnhart,* 279 F.3d 441, 446 (7th Cir.2002). "A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton v. Astrue,* 521 F.3d 799, 803 (7th Cir. 2008). SSR 00-4p, which clarifies standards for VEs providing evidence before ALJs in disability decisions, notes that "an ALJ has an affirmative responsibility to ask whether a VE's evidence conflicts with information provided in the DOT before relying on that evidence to support a determination of nondisability." SSR 00-4p at 4; *Overman*, 546 F.3d at 462-63 (internal quotations omitted). Furthermore, SSR 00-4p requires ALJs to investigate and resolve discrepancies when the VE's testimony appears to conflict with the DOT. SSR 00-4p; *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) ("If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict."). An "apparent conflict" exits where it is "so obvious that the ALJ should have picked up on [it] without any assistance." *Weatherbee v. Astrue*, 649 F.3d 565, 571-72 (7th Cir. 2011); *Overman*, 546 F.3d at 463.

At present, the ALJ satisfied SSR 00-4p's first requirement of asking whether the VE's evidence conflicted with the DOT; the ALJ asked the VE if all of his testimony was consistent with the DOT and its companion volumes, and the VE responded "yes." [R. 564.] Plaintiff contends, however, the ALJ did not satisfy the second prong of SSR 00-4P by failing to investigate and resolve inconsistencies between the VE's statements and the DOT, leading to a decision that lacks substantial evidence. [Dkt. 13 at 17-18.] This Court agrees that conflict

8

between the VE's testimony and the DOT rendered the ALJ's finding unreliable, resulting in a failure to build an accurate and logical bridge from the evidence to the ALJ's conclusion. Accordingly, the substantial evidence standard was not met and remand is required.

At Plaintiff's disability hearing, the VE identified three jobs he believed to be consistent with the RFC limitations provided by the ALJ. However, two of the three positions conflicted facially and substantively with the DOT. First, the VE testified based on the ALJ's RFC assessment Plaintiff could perform the job "receptionist," and identified DOT code 237.367.046. However, according to the DOT, per the corresponding code provided by the VE, the receptionist job identified as suitable for plaintiff's limitations is actually a telephone quotation clerk (financial) position.[3] Next, the VE testified that an individual with Plaintiff's restrictions provided by the ALJ's hypothetical could perform the job of "general office clerk," for which he provided DOT code 209.587-010. According to the DOT, per the corresponding code provided by the VE, the general office clerk job identified as suitable for Plaintiff's limitation is actually an addresser (clerical) position.[4]

Several factors produced unresolved confusion in the VE's testimony. First, the DOT provides separate definitions for "receptionist"[5] and "general office clerk"[6] jobs that are

---

[3] DOT Code 237.367-046: Telephone Quotation Clerk (Financial) - Answers telephone calls from customers requesting current stock quotations and provides information posted on electronic quote board. Relays calls to REGISTERED REPRESENTATIVE (financial) 250.257-018 as requested by customer. May call customers to inform them of stock quotations. https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02B.HTM, last visited July 19, 2017.

[4] DOT Code 209.587-010: Addresser (clerical) - Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail. https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02A.HTM, last accessed July 19, 2017.

[5] DOT Code 237.367-038: Receptionist (clerical) - Receives callers at establishment, determines nature of business, and directs callers to destination: Obtains caller's name and arranges for appointment with person called upon. Directs caller to destination and records name, time of call, nature of business, and person called upon. May operate PBX telephone console to receive incoming messages. May type memos, correspondence, reports, and other documents. May work in office of medical practitioner or in other health care facility and be designated Outpatient Receptionist (medical ser.) or Receptionist, Doctor's Office (medical ser.). May issue visitor's pass when required. May make future appointments and answer inquiries. https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02B.HTM, last accessed July 19, 2017.

[6] DOT Code 209.562-010: Clerk, General (clerical) alternate titles: office clerk, routine - Performs any combination

substantively different than those of the VE's codes. Second, the VE offered little to no substantive description of the jobs he provided which would allow the ALJ to reasonably determine if the job code or job title provided was suitable for Plaintiff. Absent descriptive VE testimony, it is difficult to decipher if the RFC hypothetical posed by the ALJ was applied to the job titles or codes provided by the VE. The VE himself appeared unsure: he reduced the number of national office clerk jobs by 2/3 because the job was a ""smaller organization type thing where you're doing lots of different things [including] answer[ing] some phones," [R. 565.] Yet, the DOT's job description of the corresponding code he provided describes the job exclusively as addressing documents and sorting mail. Furthermore, the DOT defines general office clerk as SVP level 3, while the VE's testimony provided an SVP of 2 to the job. As a result, it is unclear if the jobs the VE determined Plaintiff could perform per the DOT's requirements are based on the codes or job titles supplied by the VE. It is also unclear which jobs the VE used to support his national job availability findings. *See* R. at 489 ("The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as receptionist 237.367-046, 149,000 jobs available in the national economy…and general office clerk 209.587-010, 66,400 jobs in the national economy.") (internal ellipses omitted).

Because the job codes and titles supplied by the VE substantively conflict with the DOT, and the VE provided little descriptive testimony of the occupations Plaintiff is capable of performing, the Court lacks the tools to resolve the conflict in the VE's testimony. The ALJ did

---

of following and similar clerical duties requiring limited knowledge of systems or procedures: Writes, types, or enters information into computer, using keyboard, to prepare correspondence, bills, statements, receipts, checks, or other documents, copying information from one record to another. Proofreads records or forms. Counts, weighs, or measures material. Sorts and files records. Receives money from customers and deposits money in bank. Addresses envelopes or packages by hand or with typewriter or addressograph machine. Stuffs envelopes by hand or with envelope stuffing machine. Answers telephone, conveys messages, and runs errands. Stamps, sorts, and distributes mail. Stamps or numbers forms by hand or machine. Photocopies documents, using photocopier. https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02A.HTM, last accessed July 19, 2017.

not seek any clarification and instead adopted the VE's testimony verbatim into his step five analysis and finding of "not disabled." Accordingly, the ALJ failed to build a logical bridge between the evidence and findings, and the case must be remanded. *See Overman,* 546 F.3d at 465 (where ALJ's ruling is based on testimony that conflicted with the DOT and "otherwise was vague and confusing, the case must be remanded for further proceedings.").

The Commissioner argues Plaintiff waived her ability to challenge the reliability of the VE's testimony by failing to do so during the hearing.[7] [Dkt. 20 at 13.] However, a claimant maintains a basis for challenging the reliability of VE testimony that appears to conflict with (and not supplement) the DOT, even where counsel for Plaintiff fails to object during the administrative hearing. *Brown v. Colvin,* 845 F.3d 247, 254-55 (7th Cir. 2016) ("[w]e have repeatedly noted that if a vocational expert's testimony appears to *conflict* with the DOT, the ALJ must obtain a reasonable explanation for the apparent conflict, and that a claimant's failure to object during a hearing cannot excuse an ALJ's failure to do so.") (internal quotations omitted). The Seventh Circuit defines "apparent conflict" between the DOT and VE testimony under SSR 00-4p as conflict "obvious enough that the ALJ should have picked up on [it] without any assistance." *Overman,* 546 F.3d at 463. The threshold for apparent conflict requiring ALJs to further examine VE's testimony remains, however, without a bright line. *See Prochaska,* 454 F.3d at 736 (determining inconsistencies between jobs described by VE as possible for the claimant based on the evidentiary record and the DOT's definitions, in light of claimant's physical or mental restrictions, created apparent conflict); *Weatherbee*, 649 F.3d at 571-72 (finding that minor discrepancies in job titles described by VE and DOT were insufficient to

---

[7] A claimant's failure to object to VE testimony that *supplements* the DOT during the administrative hearing results in forfeiture of the argument. *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016); *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) (emphasis added). For example, VE testimony that "conflicts" with the DOT because the expert's experience and knowledge on a subject exceeds the DOT or is based on other reliable publications is not subject to post-hearing objection because it is supplementary. *Brown*, 845 F.3d at 255.

11

create apparent conflict).

At present, the record does not indicate the VE's conflicting testimony was due to reliance on personal knowledge that supplemented or superseded the DOT, or reliance on another credible publication. Rather, it appears the VE's conflicting testimony was an error. Thus, Plaintiff did not forfeit her argument by failing to object to the VE's testimony during her hearing because it did not supplement the DOT. While we decline to conclusively determine what constitutes "apparent conflict," it is clear at present that without clarifying the conflict in the jobs provided in the VE's statements and the DOT, the ALJ's decision is based on unclear and potentially erroneous VE statements, resulting in pattern of reasoning at step five of the disability determination that cannot be logically traced. Accordingly, the decision is not based in substantial evidence and requires remand for resolution of the conflict between the VE's testimony and the DOT.[8]

### b. Reliance on the VE's Testimony Did Not Constitute Harmless Error

The ALJ's reliance on VE testimony that conflicted with the DOT was not harmless error. The ALJ's failure to comply with SSR 00-4p is harmless error if "a significant number of jobs cited by the ALJ and not inconsistent with the DOT [remain] available to [plaintiff]." *Coleman v. Astrue*, 269 F. App'x 596, 602 (7th Cir. 2008). An individual is disabled if he "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). As stated above, the Commissioner bears the burden of proving at step five of the disability analysis that there are a significant number of jobs claimant can perform. *Liskowitz,*

---

[8] Because the Court remands on this issue, it need not explore in detail the other arguments posited by Plaintiff on appeal since the analysis would not change the results in this case.

559 F.3d at 742-43. The statutory requirements of 42 U.S.C. § 423(d)(2)(A) do not define what quantity of jobs is "significant." While Seventh Circuit case law has found 1,000 available jobs qualifies as "significant," the determination is almost always assessed at a regional or local level, not at the national level. *See Barrett*, 368 F.3d at 692 ("[i]n our experience, and, it seems, in that of the other circuits as well, the vocational experts who testify in social security disability cases concerning the availability of jobs that the applicant has the physical ability to perform almost always confine their testimony to indicating the number of such jobs that exist in the applicant's state, or an even smaller area.").[9] Furthermore, in formulating a common sense judgment based on the claimant's specific limitations, ALJs should balance factors including the distance claimant is capable of traveling to work, the potential isolated nature of the work, and the availability of such work. *See Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir. 1988) ("[a] judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.").

The VE's testimony produced one job in which the job title aligned with the DOT code provided – order clerk. [R. 563.] The VE determined 8,500 order clerk jobs existed in the national economy within the Plaintiff's RFC limitations. [*Id*.] The VE's testimony consisted only of job availability in the national economy and gave no consideration of local or regional job figures, nor Plaintiff's ability to work jobs in national markets in light of the *Jenkins* criteria

---

[9] *See also Brown*, 845 F.3d at 255 ("[n]evertheless, this error is harmless, since the other five non-greeter positions totaled 5,303 jobs in Wisconsin alone"); *Stanley v. Astrue*, 410 F. App'x 974, 976 (7th Cir. 2011); *Liskowitz*, 559 F.3d at 743 (noting 4,000 jobs in the Milwaukee area claimant was capable of performing as significant); *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir. 1993) (finding no reversible error where expert stated there were approximately 1,400 positions claimant could perform in greater Milwaukee metropolitan area).

13

discussed above. Accordingly, the existence of 8,500 national order clerk positions and the ALJ's reliance on VE testimony conflicting with the DOT is not harmless error.

## IV. Conclusion

For the reasons discussed herein, the Court grants the Plaintiff's motion in support of reversing the decision of the Commissioner and denies the Commissioner's motion for summary judgment. The Court reverses the Commissioner's decision and remands for further proceedings consistent with this opinion.

Entered: July 27, 2017

_____
U.S. Magistrate Judge, Susan E. Cox